## Case No. 15,652.

UNITED STATES v. LYTLE et al.

[5 McLean, 9.][1]

Circuit Court, D. Ohio.    Oct. Term, 1849.

EXECUTIVE DEPARTMENTS—CONSTRUCTION OF LAWS —HOW FAR CONCLUSIVE.

1. The executive in carrying into effect laws, must necessarily give a construction to them, and such construction is binding upon the judiciary, when private rights are not affected.

[Cited in Westbrook v. Miller, 22 N. W. 256, 56 Mich. 152.]

2. The treasury department cannot enlarge the district of a surveyor general, but where such district depends upon the construction of various acts of congress, and those acts have been uniformly construed one way, and such construction has been repeatedly sanctioned by legislative action, it must be considered as conclusive on the judiciary.

[Cited in brief in People v. Commissioners State Contracts, 11 N. E. 181.]

3. And where such construction had been fixed for years, a security to a surveyor general's bond, cannot set up in defence as a bar to a suit on the bond that the duties as performed were beyond the proper limits of the surveyor general's district.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

At law.

Mr. Bartley, U. S. Dist. Atty., and Mr. Stanbery, for the United States.

Ewing & Swayne, for defendants.

OPINION OF THE COURT.[2] This action is brought on an official bond given by Robert T. Lytle, as surveyor general, dated 29th April, 1836. The bond recites, "that whereas, the president of the United States had, pursuant to law, appointed Robert T. Lytle, the surveyor general of the public lands, in the states of Ohio, Indiana, and Michigan territory," &c., the conditions of which were, "that the said Robert T. Lytle should faithfully disburse, according to law, all moneys placed in his hands for disbursement, and should faithfully discharge the duties of said office."

The declaration contained many counts, to which several pleas were filed, setting up that the duties of Lytle were to be performed, and his disbursements made, within the states of Ohio and Indiana, and that part of Michigan territory east of a line drawn due north from the Wabash river and Port Vincennes to the Canada shore; and that a large part of the moneys placed in his hands for disbursement, was required to be disbursed beyond these limits, and for the faithful disbursement of which, the sureties of the said Lytle are not responsible; and that the accounts kept by the government do not distinguish between the sums disbursed by him beyond those limits, and those paid within them. The plaintiffs demurred to these pleas.

By the pleadings, the issue is made to turn upon the extent of the legally constituted district of the surveyor general. The first section of the act of May 18, 1796 [1 Stat. 464], provided, "that a surveyor general shall be appointed, whose duty it shall be to engage a sufficient number of skillful surveyors as his deputies, whom he shall cause, without delay, to survey and mark the unascertained outlines of the lands lying north-west of the Ohio river, and above the mouth of the Kentucky river, in which the titles of the Indian tribes have been extinguished," &c. The act of March 26, 1804 [2 Stat. 277], extends the power of the surveyor general over "all the public lands of the United States, to which the Indian title has been or shall be hereafter extinguished, north of the river Ohio, and east of the river Mississippi." On the 28th February, 1809, the Illinois territory was established, to consist of "all that part of Indiana territory which lies west of the Wabash river, and a direct line drawn from said Wabash river and Port Vincennes, due north, to the territorial line and Canada shore." The act of April 29, 1816 [3 Stat. 325], authorizes the appointment of a "surveyor of the lands of the United States, in the territories of Illinois and Missouri. And he is required to cause so much of the public land to be surveyed as the president of the United States shall direct, and to which the titles of the Indian tribes have been extinguished, in the manner, and to do and perform all such other acts in relation to such lands, as the surveyor general is authorized and directed to do in relation to the same." And all repugnant acts are repealed.

These acts, it is admitted, reduced the district of the surveyor general, to the states of Ohio and Indiana, and so much of the Michigan territory as lies east of the line above designated, as constituting the eastern boundary of the Illinois territory. By the act of April 18, 1818 [3 Stat. 428], the people of Illinois were authorized to form a constitution and establish a state government. The state to be bounded on the north by latitude 42 deg. 30 min., and all the country north of that line was annexed to Michigan territory. This is the tract of country embraced by Wisconsin. And it is claimed that the annexed territory was taken out of the jurisdiction of the surveyor for Illinois and Missouri, and placed in that of the surveyor general, who, it is contended, had jurisdiction over all the public lands, to which the Indian title was extinguished, and which were not made subject to any other surveyor.

When the surveyor general was first appointed, his jurisdiction was limited and special over the public lands, and it has continued to be so. In this respect his powers appear to be similar to those of the surveyors which have since been appointed. His district was large at first, but it was reduced by the establishment of other and independent districts, and the law confers upon him no general powers which do not belong to other surveyors. There seems to be, therefore, no ground for the position that his powers extend to all the public lands wherever situated, which do not lie within a special jurisdiction. He is called the surveyor general, but he has no superintendency over the other surveyors, and the name having been given, it is presumed, to distinguish him from the deputy surveyors he was authorized to appoint, it is still accorded to him generally, although the same reason would apply it to other surveyors who exercise similar powers, and who, in various other acts, are called surveyors general.

The great question in the case is, whether the district of country west of Lake Michigan, and within the territory of Michigan, was embraced by the district for which Lytle was appointed surveyor general. There can be no doubt that the treasury department considered the country west of Lake Michigan as being within his district.

[2] This opinion was prepared, though not delivered. The case was taken up and adjusted on equitable principles, by Mr. Meredith, the secretary of the treasury. As the questions raised by the demurrer are not understood to have influenced the adjustment of the claim, on its merits; and as the view of the court on the demurrer embraced some matters of interest, the opinion is published.

In explanation of the estimates of the expenses of surveying the public lands, for the year 1833, submitted by the secretary of the treasury, there was an item of $50,000 "for Ohio, Indiana, and Michigan peninsula; also surveys west of the lake." These items were contained in the report of the commissioner of the general land office. And in an official letter of Mr. Williams, the predecessor of Mr. Lytle, November 7, 1832, the following items of expenditure are required: "For surveying the public lands in the Michigan territory, west of Lake Michigan, for contracts now existing, $20,000. For other surveys in Ohio, Indiana, and the peninsula of Michigan, $5,000." In a letter of the commissioner of the general land office, dated February 9, 1836, in answer to inquiries made of him by a member of the house of representatives, he says. "As those lands lying north of the state of Missouri are in the territory of Michigan, they would, therefore, be under the jurisdiction of the surveyor general, at Cincinnati." And in an official letter to Mr. Lytle, dated August 16, 1836, he says: "$50,000 have been appropriated for surveying in Michigan territory, west of the Lake, and in Wisconsin territory, which amount exceeds, by $25,000, that submitted in your last annual report." These, and other official letters of the surveyor general and of the treasury department, show, that before the date of Lytle's bond, and after it, his district was considered as embracing the whole of Michigan territory.

In the argument it was stated, that the terms "surveyor general" were applied only to the surveyor of the above district. In this the counsel are mistaken. In the correspondence of the land office, other surveyors are occasionally called surveyors general; and also in the reports of committees. In the act of March 3, 1831 [4 Stat. 492], to create the office of surveyor of the public lands for the state of Louisiana, the first section provides, "that a surveyor general for the state of Louisiana shall be appointed," &c. And also in the act of May 7, 1822 [3 Stat. 697], by the first section, "every surveyor general is required to give bond." And in the second section, "the commission of every surveyor general in office was to expire on the 1st day of February ensuing; and every surveyor general's commission afterwards, was limited to four years." But, generally, the name of surveyor general was applied to the surveyor of Ohio, Indiana, and Michigan. And where such designation is used in any of the acts, which have a bearing on this controversy, there can be no doubt of its application.

The views of the treasury department in regard to the extent of the surveyor general's district, were sanctioned by numerous acts of congress. This has been done uniformly since the passage of the act of April 18, 1818, authorizing the people of Illinois to establish a state government, and annexing the territory north of the state boundary to Michi-

gan. Such annexation seems to have been considered by congress and the treasury department, as extending the surveyor general's district. By the act of March 3, 1831, all the public lands to which the Indian title had been extinguished, lying north of the northern boundary of the state of Illinois, west of Lake Michigan, and east of the Mississippi river, were required to be surveyed in the same manner, and under the same regulations, &c., as other lands are surveyed. The act of June 28, 1834, attached the country north of the state of Missouri, west of the Mississippi, and east of the Missouri river, to Michigan territory. This district afterwards constituted the territory of Iowa. The act of May 11, 1820 [3 Stat. 572], continued the powers of the commissioners to decide on the "rights of certain claimants of land in the district of Detroit, and, for other purposes," appointed under the act of April 23, 1812 [2 Stat. 710]. And the commissioners were authorized to ascertain the claims to land at the settlements of Green Bay and Prairie du Chien; and the second section of the latter act was revived. By that section the tracts confirmed were directed to be surveyed under the direction of the surveyor general, by such of his assistants as the said surveyor general shall appoint. By the act of February 21, 1823 [3 Stat. 724], the above act of 1820 is revived and extended to claims in the county of Michilimackinaw, and the sixth section provides, that it "shall be the duty of the surveyor general of the United States, under the direction of the secretary of the treasury, to cause the land confirmed by this act to be surveyed," &c. These claims were west of Lake Michigan. The act of July 2, 1836 [5 Stat. 70], required the surveyor general to lay off the towns of Fort Madison and Burlington, Belleview, Dubuque, and Peru, in the territory of Wisconsin. By the act of April 20, 1836 [Id. 10], the Wisconsin territory was organized, and Iowa was annexed to it. The twelfth section enacted that the laws of the United States are hereby extended over, and shall be in force, in said territory, so far as the same or any provisions thereof may be applicable.

A letter from the commissioner of the general land office, dated August 28, 1831, to Mr. Williams, the predecessor of Lytle, directed him to cause to be surveyed without unnecessary delay, the four principal meridian lines in continuation of that meridian which will be run by Col. McKee, (the surveyor of Illinois and Missouri) to the northern boundary line of Illinois. That line strikes the Wisconsin river, north of Illinois, not far from the Mississippi. In the appropriation bills since 1827, the surveyor general of Ohio, Indiana, and Michigan, is named, as the other surveyors are, of the states and territories which compose their several districts. This shows the view of congress as to the extent of their respective districts. The territory of Wisconsin was created by the act of April

20, 1836; and by the act of June 12, 1838 [5 Stat. 243], provision was made for the appointment of a surveyor of the territory, "who shall have authority and perform the same duties respecting the public lands, and private land claims in the territory of Wisconsin, as are now vested in and required of the surveyor of the lands of the, United States in Ohio." And the second section requires the "surveyor for Ohio to deliver to the surveyor of Wisconsin territory, all the maps, papers, records, and documents, relating to the public lands and private land claims in the said territory of Wisconsin, which may be in his office."

This latter act is conclusive as to the construction given by congress, in regard to the extent of the district of the surveyor general. The act was passed subsequent to the date of Lytle's bond, and it cannot, therefore, affect the legality of the bond, but it is referred to as showing the uniform construction of the district, and in corroboration of prior acts. The appropriation bill for 1818, gives $1000 to the surveyor of the Illinois and Missouri territories. In a similar bill for 1819, the state of Illinois having been established, the appropriation was for the like sum to the surveyor in the state of Illinois and the Missouri territory. And such was substantially the designation given to the above surveyor down to the year 1836. Prior to that, the appropriations for surveying were made in gross; but in that year they were made specifically, for the Michigan peninsula, and for Michigan west of the Lake, and in Wisconsin; and also for Illinois and Missouri. This mode of making such appropriations has since been observed Since the act of 1816, constituting a surveyor's district of the Illinois and Missouri territories, and which limited the jurisdiction of the surveyor general of Ohio to the eastern line of Illinois, there has been no direct legislative action on the subject. And it is contended that the boundaries of a surveyor's district can only be extended or altered by direct legislation.

In establishing surveyor's districts, states and territories are referred to, as a convenient mode of fixing their boundaries. They might have been described by water courses, degrees of latitude, or by mathematical lines between given points. But the boundaries of states and territories being better known, generally, than other lines, they have been preferred. Surveyor's districts thus formed, are in no way connected with the political organization of a state or territory, or affected by the change of their boundaries. By the act of March 3, 1807 [2 Stat. 448], the president of the United States was authorized to lease lead mines in the Indiana territory; but those mines were included within the Illinois territory, subsequently established, and it was objected, therefore, on that and other grounds, that the president had no power to lease. But the court, in U. S. v. Gratiot [Case No. 15,249], said: "The

act authorizing the president to lease lead mines refers to them as situated in the territory of Indiana; but this is merely descriptive of the locality of the mines, and does not limit the exercise of the power to the boundaries of Indiana, as they might afterwards be changed. The lead mines within the original limits of the territory were the mines which the law authorized the president to lease; and no subdivision of the territory, or change from a territorial to a state government, can affect the exercise of the power."

These remarks have some application to the principle of the case under consideration. And if it stood upon the acts of 1816 and 1818, it would seem that the surveyor general's district was limited to the eastern line of the Illinois territory. The act of 1818, which attached the land north of the state line of Illinois to Michigan, enlarged that territory, but this did not necessarily enlarge the district of the surveyor general. But a different construction has been placed upon that act by the treasury department, and by congress. It cannot be doubted that they construed the district of the surveyor general as embracing the whole of the Michigan territory. And this construction has been acted upon by the treasury department from 1818, in directing surveys to be made, and in issuing patents; and by congress, in making appropriations for such surveys; in requiring private claims to be surveyed west of Lake Michigan, by the surveyor general, and by making no other provision for surveys within that territory.

It is admitted that the treasury department has not power to establish or alter the district of the surveyor general. But the executive branch of the government is bound to give effect to the laws which regulate its duties. And this necessarily requires a construction of those laws. And where such construction has been acted on for a great number of years, under the sanctions of the law-making power, it becomes a serious question how far the judicial power can or should interfere. So far as the public are concerned, there can be no doubt that the surveys made by the surveyor general, in every part of Michigan, are valid. And we suppose that the surveys of private claims, under the special acts, within the same territory, are also valid. Under these acts of the government, rights have been acquired, which ought not, and, perhaps, cannot be shaken. Lapse of time, with its healing effects, and in all its force, applies to such rights. Where, under an executive construction of the law, a wrong is done to an individual, the courts will give him redress. But where no such wrong is done, it is supposed that acts of the executive within the general scope of its powers, and by virtue of law, cannot be reviewed, though, to some extent, the letter of the law may not have been followed. There is no court

of errors, in which executive decisions that do not affect individual rights, can be reversed.

Congress have, since 1827, in prescribing the duties of the surveyor general, in appropriating his salary, and in all legislative reference to him, spoken of him as the surveyor general of Ohio, Indiana, and Michigan. And the other surveyors are named as surveyors of the states or territories which compose their respective districts. This designation is important as showing the view of congress in regard to the jurisdiction of the surveyor general; and when taken in connection with other acts, can leave no doubt upon the mind of any one, that they authorized and required him to perform his functions within the entire territory of Michigan. This, then, is not a mere legislative construction of a previous act, but a recognition of rights, and an imposition of duties by the paramount authority. That the surveyor general was as responsible for the duties thus imposed, as for the performance of any other duties which belonged to his office, we suppose to be unquestionable. He was then, in making surveys in the territory west of Lake Michigan, acting in the line of his duty under the sanctions of law. The surveys were required to be made by law; the surveyor general was instructed, by the proper authority, to cause them to be made; and they were made accordingly, under his direction. They were made within the territory of Michigan, and that, by the concurrent views and action of the treasury department, and of congress, was within the district of the surveyor general. Whether this resulted from a construction of the act of 1818, or the act of April 20, 1836, which organized the territory of Wisconsin, and extended the laws of the United States over it, or of some other act, may not be material; the fact of the exercise of jurisdiction under the direction of the law-making power is undisputed.

From these facts the question arises, whether the defendants, as sureties of Lytle, are responsible for his disbursements west of Lake Michigan. The first bond of Lytle was dated April 23, 1835, the second, on which this suit is brought, April 29, 1836. Before the date of the first bond, and in the time of Williams, the predecessor of Lytle, contracts were made, and surveys were being executed west of the Lake. And the first report of Lytle contained requisitions for appropriations to continue those surveys, and cover expenses in making them, already incurred. There could have been no surprise to the surveyor general, or to his sureties, that he was called upon to superintend these surveys. They constituted no inconsiderable part of his duties, as they had done those of his predecessor.

In the general appropriation law of 1837, there was appropriated "for completing the surveys, &c., in Ohio, Indiana, Michigan, and Wisconsin, $3,040," and "for surveying of the public lands in the district composed of the states of Illinois and Missouri, $36,000." Here, as in other cases of appropriations for surveys, the districts are designated. The question does not arise whether the sureties are responsible for the performance of new and additional duties, imposed by law on the surveyor general, after the date of the bond. If the Michigan territory, west of the Lake, was within the district of the surveyor general, it is not pretended that the duties required of him did not belong to the office, when the defendants became bound as sureties. The recital in the bond stated that "pursuant to law the president had appointed Lytle surveyor general of the public lands, in the state of Ohio, Indiana, and Michigan territory." And if the whole of Michigan territory was embraced in the district, then the bond does not extend beyond the law. That the entire territory was within the district appears from the action of the treasury department, and the authoritative action of congress.

But it is objected, "if the territory now Wisconsin and Iowa, the latter lying west of the Mississippi river, became a part of the surveyor general's district, by being attached to and made a part of the Michigan territory, that the same territory, by being detached, on the same principle, ceased to be a part of the district." This consequence does by no means follow. The above territory was made a part of the Michigan territory, and, by various acts of congress, the duties of the surveyor general were required to be performed within the annexed territory, as a part of Michigan. Subsequently, the Wisconsin territory was established, and the surveyor general, under the orders of the treasury department and the sanctions of congress, continued to discharge his functions until, by the act of 1838, provision was made to appoint a surveyor general for Wisconsin. In that act congress provide that the new surveyor "shall have authority and perform the same duties respecting the public lands and private land claims in the territory of Wisconsin, as are now vested in and required of the surveyor of the lands of the United States in Ohio." They give to the Wisconsin surveyor, by this act, no more power over the public lands of the territory than was vested in the surveyor general. If he had no power to make surveys in this territory, then the surveyor of the territory received none under the act.

Where the boundary of a state or territory constitutes the surveyor's district, and that boundary is enlarged, the argument is not without plausibility, that the district is also enlarged. But when the district thus enlarged is sanctioned by numerous acts of legislation, and by a uniform course of the treasury department, for a great number of years, there would seem to be little ground for doubt on the subject. Congress had the

power to require the surveyor general to perform duties in any state or territory, without fixing the boundary of his district. The law requiring his duties to be performed in a territory or state, makes such territory or state his district. Now, this was done, substantially, in Wisconsin territory. The law required the lands in that territory to be surveyed, to which the Indian title had been extinguished. Those lands, by the uniform action of congress, and of the executive department, for eighteen years before the appointment of Lytle were considered within the district of the surveyor general. No other surveyor had any jurisdiction over them. None other claimed or exercised such right, or was authorized to do so under the acts of congress. This would seem to be conclusive as to the jurisdiction of the surveyor general.

After the most deliberate examination of this case, and under the pressure of the executive construction of the laws, sanctioned in various forms by the legislative power, I am brought to the conclusion, contrary to my impression during the argument, that the whole of the territory of Michigan was embraced in the district of the surveyor general; and, consequently, that the bond of the defendants is not void or inoperative, on the ground stated in the pleas. The demurrers to the pleas are, therefore, sustained.